In re McKENNAN'S ESTATE.
SHERMAN et al. v. STATE.

There is vested in the state, through the Legislature, absolute power over all matters of taxation, except as the power may be restricted by the State Constitution, or by some power delegated to the federal government.

In the interpretation· of any law relating to taxation attacked as unconstitutional, every intendment must be in favor of its validity.

A charge of the nature imposed by Inheritance Tax Law, Sess. Laws 1905, c. 54, is a tax upon the transmission of property, and has nothing to do with, and is not at all dependent for its validity upon, the right to regulate the succession of property.

Inheritance Tax Law, Sess. Laws 1905, c. 54, is not void because not complying with Const. art. 11, § 8, requiring the object of a tax to be stated in the law levying it, as that article and section relate only to the ordinary property tax, and not to a tax of the character imposed by the inheritance tax law, which is upon the transmission of property.

Const. art. 11, § 5, exempting property of the United States, the state, county, and municipal corporations from taxation, and section 6, exempting property used exclusively for religious and charitable purposes, and section 7, avoiding all other exemptions, relate

exclusively to property exemptions, and do not control a tax of the character imposed by Inheritance Tax Law, Sess. Laws 1905, c. 54, which is a tax upon the transmission of property.

Inheritance Tax Law, Sess. Laws 1905, c. 54, is not void because making exemptions other than allowed by Const. art. 11, § 7, as that section relates exclusively to property exemptions, and does not control a tax of the character imposed by the inheritance tax law, which is a tax upon the transmission of property.

Const. art. 11, § 2, requiring all taxes to be uniform, relates exclusively to the ordinary property tax, and not to a tax of the character imposed by Inheritance Tax Law, Sess. Laws 1905, c. 54, which is a tax upon the transmission of property.

Const. art. 6, § 17, providing that all taxation shall ·be equal and uniform, permits not only classification, but a progressive rate within classes, provided such classification and progression are based upon proper foundation and result in substantial uniformity and equality.

The classification based on kinship made by Inheritance Tax Law, Sess. Laws 1905, c. 54, meets the constitutional requirement of equality and uniformity of taxation.

The method of progression from transmission of less to those of greater value provided by Inheritance Tax Law, Sess. Laws 1905, c. 54, whereby the higher rate of tax in case of transmission of a greater estate is levied upon the whole value of the property transmitted, rather than the increased rate applying only to the excess, in value of property transmitted, over the amount subject to the next lower rate, is in violation of Const. art. 6, § 17, requiring all taxation to be equal and uniform.

The courts of one state are not bound by the constitutional construction placed upon a law by the courts of the states from which the law came, and this even if the Constitutions are the same.

Haney, J., dissenting.

(Opinion filed, May 10, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

In the matter of the assessment of an inheritance tax upon the estate of Helen G. McKennan, deceased. From an order of the Circuit Court on Appeal from the County Court, declaring the estate subject to the tax, E. A. Sherman, executor, and others, appeal. Reversed, with directions.

*Boyce & Warren, Aikens & Judge,* and *Sioux K. Grigsby,* for appellants. *S. W. Clark, Atty. Gen.,* and *Alpha F. Orr, State's Atty.,* for the State.

WHITING, P. J. This action was brought to test the constitutionality of chapter 54 of the Session Laws of 1905, being the act commonly known as the "inheritance or succession tax law."

The will of one Helen G. McKennan was, on the 13th of October, 1906, admitted to probate by the county court of Minnehaha county. The provisions of such will were set forth in certain findings of fact made by such county court, which findings will be hereinafter referred to. It appears that in September, 1907, the executor of, and trustee under, the above-mentioned will, learning that the county court was about to appoint an appraiser under the provisions of the above-mentioned law in order to have the property of the estate appraised for the purpose of assessing the tax under such law, presented to such court a petition setting forth the facts hereinafter stated, and, claiming that, under such facts, the property of such estate was exempt from taxation under said inheritance tax law, asked the court to refrain from the appointment of an appraiser, and also asked the court to adjudge that certain lands conveyed to the city of Sioux Falls and to the First Congregational Church were not part of such estate. The court, in pursuance of such statute, issued a citation to all the parties interested asking them to show cause why such property should not be appraised and the inheritance tax imposed upon such property. In answering such order, the interested parties raised, among others, the questions hereinafter discussed. A stipulation as to the value of the several parts of the estate was entered into, and thus the necessity for appointment of appraiser was waived. The said county court appraised the estate and made findings of facts and conclusions of law.

Such findings of fact, so far as they are material, are, in substance, as follows: The deceased left a will which had been duly admitted to probate. An executor had been appointed, had qualified, and letters had issued to him. On September 6, 1906, the said Helen G. McKennan, in contemplation of death, had made and executed to the First Congregational Church of Sioux Falls, S. D., a warranty deed to certain lands therein described,

which deed was duly acknowledged and delivered in escrow with definite and irrevocable instructions in writing that the same, immediately upon her death, be delivered to the grantee. She died September 29, 1906. The deed was at once delivered and placed of record. Such church was a religious corporation, and the conveyance so made was made and received with the purpose and intent that such property should be used exclusively for religious and charitable purposes. The church society had since sold such lands for $5,000 and had used the proceeds in the construction of a church building for such society, which building was used exclusively for religious purposes. Said land so conveyed was and now is of the value of $5,000. On said September 6, 1906, in contemplation of death, said Helen G. McKennan made and executed to the city of Sioux Falls, S. D., a deed to a certain tract of land, such deed conditioned that said land was to be used and kept as a public park for the benefit of the public, but with power on the part of the city to sell such part of the tract as should seem to it necessary for the purpose of improving the remainder. This deed was also placed in escrow under the same conditions as the deed above mentioned and, in the same manner, was delivered and placed of record. Certain parts of said last-mentioned land have been sold under the power contained in such deed. The value of the land was and is $17,000. At the time of her death said Helen G. McKennan left property real and personal, other than above mentioned, to the value of $32,000, some $5,000 of which was money on hand. Certain claims have been filed against the estate, which claims are in litigation and not yet adjudicated. The will provided that, after the payment of legacies and debts, the remainder of the property should be devised to one Sherman, who was the executor, to be held by him in trust, to be sold and converted and the proceeds therefrom paid over to certain trustees, for the purpose of constructing and maintaining a public hospital in the city of Sioux Falls, S. D., which said trust was one exclusively for charitable purposes.

As conclusions of law, the court found that the property conveyed to the church society was subject to tax on the valuation of $4,900 at the rate of 4 per cent.; that the property conveyed to the city was subject to a tax on a valuation of $15,900 at the rate of 6 per cent.; that the real estate devised in trust was subject to a tax on a valuation of $31,380 subject to a reduction by allowance of further claims, such tax to be at a rate of 8 per cent.; that the church society was liable for the payment of the tax against the property conveyed to it; that the city was liable for the tax on its property, and the executor and trustee in his official capacity liable for the tax on the residue. Decree was entered in conformity with such findings and conclusions; said decree containing a direction and an order to the church society and to the city to pay the tax to the county treasurer, and a direction and order to the trustee to retain the tax on the residue until the claims against the estate should be adjudicated.

The city, church society, executor, and trustee appealed to the circuit court upon questions of both law and fact. In the circuit court it was stipulated that the case be determined upon the findings made by the county court, which findings were, in accordance therewith, adopted by the circuit court. The court made conclusions similar to those of the county court, except that it directed the sale of the lands, conveyed to the city, for the payment of the tax, and further provided, in relation to the tax upon the residue in the hands of the executor and trustees, that, if the claims thereafter allowed should reduce the net amount in his hands below $20,000 but in excess of $10,000, they should pay the tax at a rate of 6 per cent., and, if reduced to $10,000, at a rate of 4 per cent., and a decree was entered in accordance with such findings and conclusions, from which decree appeal was taken to this court.

Several assignments of error are found in the record herein, nearly all of which are based upon the alleged unconstitutionality of the law herein involved. Several grounds of unconstitutionality are set forth rendering it necessary to consider fully the said law.

Our law is, in a general way, similar to those of many other

states; but it appears to have been copied after that of the state of Illinois. The parts material for our consideration in discussing the assignments hereinafter discussed provide for a division of the beneficiaries into three classes: First, those closely related to the deceased, and as to this class the rate of tax shall be $1 on every $100 of the clear market value of the property received by each person, with a proviso that, in case of estates of $20,000 or less transferred to the widow of the deceased, or of $5,000 to any one of the other parties named in such class, the same shall be exempt from such tax, and in any case there shall be such exemptions allowed from the estate passing to such parties; second, those persons more remotely related to the deceased, and, as to this class, the tax shall be $2 on every $100 of the clear market value of the property received by each person, with a proviso that there shall be an exemption from such tax in favor of each of said persons of $500; third, all beneficiaries not included in either of the others, and, as to this class, the law provides that the rate shall be as follows: "On each and every one hundred dollars of the clear market value of all property and at the same rate for any less amount on all estates of ten thousand dollars and less, four dollars; on all estates of over ten thousand dollars, and not exceeding twenty thousand dollars, six dollars; on all estates over twenty thousand dollars and not exceeding fifty thousand dollars, * * * eight dollars; and on all estates over fifty thousand dollars, ten dollars. Estates of the clear market value of one hundred dollars, transferred to each of the parties mentioned in the last-named class, shall be exempt.".

Before entering upon a discussion of the propositions raised by appellants' assignments, it is well to consider briefly the intrinsic nature of this method of raising revenues. The interpretation of, and construction to be put upon, the class of legislation now before us, has demanded the attention of the courts in probably the great majority of the states as well as that of the federal courts. This has been true especially in the more recent years, which fact might lead one to suppose that this is some new method of taxation. Such, however, is far from the fact. An

investigation shows that such method of raising revenue has been recognized and enforced for centuries, and especially in European countries; and that in this country it is found in state legistion as far back as the early part of the nineteenth century. Though it has not generally been resorted to by the states until quite recently, the federal government has had legislation of this nature for nearly or quite a half century. No extensive historical review can serve any useful purpose herein; but to those interested therein we would call attention to the case of Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, wherein will be found a most interesting and exhaustive history of such legislation, together with a very exhaustive interpretation and construction of the federal law, which, law, as interpreted by the court in said case, is identical with the law at bar so far as theory of classification and progression in rates are concerned. Historically considered, it is enough to say that long before the establishment of the Constitution of this state what were known as "probate fees," "death dues," "inheritance taxes," and "succession taxes" were generally recognized as proper and lawful sources of revenue. In fact, it must be conceded as thoroughly established that there is vested in the state, through its Legislature, absolute power over all matters of taxation, save and except as the power of such Legislature may be restricted by the people through the Constitution, or by some power delegated to the federal government. Without such restrictions there would be no limit whatever upon methods of taxation either in relation to the classes of property or other objects of taxation, the classification of such objects of taxation, the rates levied, or any of the matters becoming vital in view of the constitutional provisions, state and federal. In re Watson, 17 S. D. 486, 97 N. W. 463; State, etc., v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218.

It therefore follows as a necessary result that, in the interpretation of any law of our state relating to taxation which is attacked as unconstitutional, every intendment must be in favor of its validity. As was well said by the court in the case of Eyre v. Jacob, 14 Grat. (Va.) 422, 73 Am. Dec. 367: "It has

always been considered to be a most delicate office for a judge to undertake to pronounce an act of the Legislature to be unconstitutional and void. It is substantially to repeal the obnoxious law, and thus in effect to exercise a power properly belonging to another department of the government. 'The question,' says Judge Marshall, 'whether a law be void for its repugnancy to the Constitution, is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.' 'It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law must be such that the judge feels a clear and strong conviction of their incompatibility with each other.' " Certainly no court should declare any law unconstitutional simply because it conflicts with the views of the judges on its advisability or necessity. Com. v. McWilliams 11 Pa. 70. "But whether a statute is contrary to the genius of a free people is a question for the Legislature, not the judge. It cannot be annulled upon any supposed natural equity, the inherent rights of freemen, or any general or vague interpretation of a provision of the Constitution beyond its plain and obvious meaning." Davis v. State, 3 Lea (Tenn.) 378. On the other hand, courts must not ignore the plain provisions of the Constitution, but should recognize that it is to the courts alone that the people can look to preserve for them those rights which have been guaranteed to them through restrictions placed upon legislation by such Constitution.

Much has been said and written in relation to the nature of the tax now in question. It has even been intimated that it is not a tax, but a mere condition imposed upon the right to receive an inheritance or to succeed to property, incident to the power to regulate transmission and succession; but this is certainly not true. State, etc., v. Ferris, supra; Knowlton v. Moore, supra. Most of the decisions speak of it as a tax on the right to inherit or succeed to property. State v. Ferris, supra; Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, 47 L. R. A. 525, 79 Am. St. Rep. 446;

Gelsthorpe v. Furnell, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; In re Fox's Estate, 154 Mich. 5, 117 N. W. 558; State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732; 7 A. & E. Ann. Cases, 1056. It seems clear to us that this is incorrect, that it is not a tax upon the right to inherit or to succeed, nor upon the right to transmit, but a tax upon the exercise of such right—upon the transmission of property. To illustrate: Every person owning property has the inherent right to sell such property, and every other person has the inherent right to purchase same. These rights are subject to regulation, but they could not be taxed unless considered as property, and, if property, must be taxed as such. Yet the federal government has in quite recent years, by its act to raise revenue for the Spanish War, imposed a tax, not on land, not on right to sell or purchase land, but upon the transfer of land, upon the exercise of the right to sell and buy. Considered as a tax either upon the land or upon the right to buy, sell, or own, it would clearly have been unconstitutional, not being properly apportioned among the states.

Most courts follow the old common-law doctrine that the so-called right to transmit property or to inherit or succeed to same is but a privilege granted by statute. Only one court, that of Wisconsin, holds it to be an inherent right. Nunnemacher Case, 129 Wis. 190, 108 N. W. 627, 9 L. R. A. (N. S.) 121, 9 Am. & Eng. Ann. Cas. 711. Courts holding it to be a statutory privilege, as well as the Supreme Court of Wisconsin in the above case, have held such a tax legal, though the Wisconsin court, in the case of Beals v. State, 139 Wis. 544, 121 N. W. 347, were confronted with the proposition that, if it was an inherent right, it was not taxable. Treating it as the taxation of the exercise of the privilege or right, or, even more correctly, the taxation of the transmission of property, it is readily seen that it becomes absolutely immaterial whether we consider the transmission of, or succeeding to, property an inherent right or a statutory privilege. A corporation acquires its right to do business by the charter received. A natural person has an inherent right to do such business. If the

state determines to tax the exercise of such right, it does so as to both the person and the corporation, utterly disregarding the nature or source of the right. That taxes of the nature under consideration are upon the transmission of property is held in Re Hickok, 78 Vt. 259, 62 Atl. 724, 6 Am. & Eng. Ann. Cas. 578; United States v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287; Knowlton v. Moore, supra. This charge imposed on transmission of property is clearly a tax and has nothing to do with, and is not at all dependent for its validity upon, the right to regulate the succession of property. Knowlton v. Moore, supra.

Appellants' first contention is that the law under consideration, being chapter 54 of the Session Laws of 1905, is void, in that it does not comply with section 8 of article 11 of the state Constitution, which provides that "no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which the tax only shall be applied." Article 11 of the Constitution is entitled "Revenue and Finance," and relates to the ordinary methods of raising the revenues necessary for maintenance of government. Other states have articles in their Constitutions similar to article 11, supra, and sections similar to section 8 thereof. Has such section and article any relation to, or bearing upon, tax legislation of the nature under consideration? We think not. There is certainly inherent in this method of raising revenue good reason why the law should not provide for the application of such revenues. This source of revenue must necessarily be one uncertain as to its returns, and it can hardly be thought that the framers of our Constitution intended that the revenue derived from sources such as those provided for by this law, or by taxes on franchises, occupations, etc., should be relied on to meet those appropriations upon which the state must rely for existence. Regardless, however, of this, we are fully satisfied that section 8 of article 11 should be construed in connection with the other sections of such article, and that, when so construed, it clearly refers to the ordinary property tax, a tax which, at the time it is levied, can be levied with knowledge as to

the probable amount of revenues that will be derived therefrom, and can thus well be rendered ample to meet the uses to which the same shall be applied. This question was raised in the case of Matter v. McPherson, 104 N. Y. 315, 10 N. E. 685, 58 Am. Rep. 502, wherein an inheritance tax law was in question. The constitutional provision in New York contained in their article relating to revenues is, in substance, the same as section 8, supra. It provides specifically that the law must state the object to which the tax is to be applied. In New York, as in this state, the law directs the money to be paid "for the use of the state" with no further direction. The New York court enters into a very full discussion of this matter, and, among other things, says, in relation to the contention now under consideration: "It is always uncertain upon whom it will fall and how much revenue it will produce. It would have been impossible for the Legislature, perhaps years in advance, to specify the particular objects to which the tax should be applied, and we are of opinion that this section of the Constitution was intended to apply to the annual recurring taxes known at the time of the adoption of the Constitution and imposed generally upon the entire property of the state."

Appellants' second contention is that the conveyances to the Congregational Church and to the city of Sioux Falls, S. D., are exempt from the levy or an inheritance tax by force of self-executing provisions of the Constitution. Section 5 provides that the property of the United States, the state, county, and municipal corporations shall be exempt from taxation. Section 6 provides for the exemption of property used exclusively for religious and charitable purposes. Section 7 provides that all laws exempting other property from taxation shall be void. These sections are all found in article 11 of our Constitution, and they clearly relate to property exemptions. As we have already said, this is not a tax, in any sense whatever, upon property, but a tax upon the transmission of property, so that the Legislature is in no manner controlled by these sections in the imposing of taxes of the kind under consideration. It is the uniform holding of the courts that constitutional provisions relating to taxation

of property in no manner bear upon taxation other than that of property. In re Watson, supra; Nunnemacher v. State, supra; In re Fox's Estate, supra.

Appellants' third contention is that the statute provides for an exemption to the widow and other heirs enumerated in section 1 of the law, contrary to the above-mentioned section 7 of article 11 of our Constitution. What we have stated in reference to the second contention answers this. No property is exempted.

Appellants' fourth contention is that: "The statute is void in that it violates section 2 of article 11 of the Constitution, which provides that all taxes to be raised in this state shall be uniform on all real and personal property according to its value in money, * * * so that every person and corporation shall pay a tax in proportion to the value of his or her or its property; and section 17 of article 6, which provides that no tax or duty shall be imposed without the consent of the people, * * * and all taxes shall be equal and uniform." It must be conceded that this contention raises a serious question, not so far as section 2 of article 11 is concerned, for that section, like sections 5, 6, and 7, supra, of the same article, relates only to property taxation, but as regards the effect of section 17 of article 6 of the Constitution. While the decisions of other courts have passed upon almost every conceivable question relating to legislation of the nature under consideration, yet they are either based upon statutes materially different, or else the constitutional provisions differ, from those of this state. In this state we have, not only the usual provisions for equality and uniformity of taxation as found in the revenue articles of the other Constitutions, but we have, as section 17 of article 6 of our Constitution, being the article setting forth the Bill of Rights, the following: "No tax or duty shall be imposed without the consent of the 'people or their representatives in the Legislature, and all taxation shall be equal and uniform." We have made a very thorough investigation to ascertain whether or not this provision was to be found in the Bill of Rights of any other state, and, in so far as we can ascertain after an examination of the Constitutions of practically every

state in the Union, no state has any provision of this nature, other than such as is found in the revenue article of its Constitution, save and except the state of Oregon, which, in its present Constitution adopted in 1857, has as section 33 of its Bill of Rights, a section identical to our section above quoted, except it uses the term "Legislative Assemly" for "Legislature." In the present Constitution of Massachusets, which was adopted in 1780, there occurs, in the Bill of Rights, a section similar to our section above, omitting therefrom the clause, "and all taxation shall be equal and uniform." The Massachusets section was copied into the Bills of Rights in the several states of New Hampshire, Maryland, Maine, and North and South Carolina. These appear to be the only provisions to be found relating to taxation outside of the revenue articles, save and except as the general declarations guarding the equal rights of citizens, found in various Constitutions, may bear upon the matter of taxation. The state of Oregon has an inheritance tax law passed in the year 1903, but the same differs from ours in certain material particulars; it being similar, in those particulars, to the Wisconsin law construed in the Nunnemacher Case, supra. The Oregon statute does not seem to have received any construction by the courts of such state.

It will be seen that our statute divides parties receiving property by inheritance or succession into three classes: Those closely related to the former owner, those more remotely related, and those not included in either of the foregoing classes. It also provides for the last class a progressive rate dependent upon the value of the property transmitted. Cases are not lacking declaring any attempted classification unlawful. And authorities are to be found holding that a progressive tax, based upon value of property transmitted, is unconstitutional. On the other hand, there are many cases sustaining classification based upon kinship, and also sustaining progression as to rates within such classes; but the courts are divided as to the rule for progression. Kochersperger v. Drake, 167 Ill. 122, 47 N. E. 321, 41 L. R. A. 446; Magoun v. Ill. Trust & Sav. Bk., 170 U .S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; Nunnemacher v. State, supra; Eyre v.

Jacob, 14 Grat. (Va.) 422, 73 Am. Dec. 367; State ex rel. Taylor v. Guilbert, 70 Ohio St. 229, 71 N. E. 636, 1 Am. & Eng. Ann. Cas. 25; Appeal of Nettleton, 76 Conn. 235, 56 Atl. 565; Knowlton v. Moore, supra; In re Fox's Estate, supra. All taxes of this nature are levied upon the value of the property transmitted, and the statutes universally provide for the allowance of a certain amount from such valuation as exempt from the tax; such exemptions varying usually according to rules based upon kinship between recipient of property and the former owner. Statutes are uniformly upheld, where, like that of this state, they provide that such exemptions shall be allowed regardless of amount of property transmitted to the party receiving the property. In re Wilmerding, 117 Cal. 281, 49 Pac. 181; State ex rel. Taylor v. Guilbert, supra. But where transmission of small legacies are exempt from taxation, and when the property transmitted is above the exemption no part is exempted, the law is held invalid. Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, 47 L. R. A. 525, 79 Am. St. Rep. 446; State ex rel., etc., v. Ferris, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218.

It is insisted by the appellants that, even conceding that the rulings of the federal courts and those of the other states are correct in sustaining classification based upon a proper basis, and conceding that kinship of recipient is a proper basis for such classification, further, conceding that the rulings of such courts, sustaining some feature of progressive taxation or of exemptions, are correct, yet those decisions are entitled to no consideration because not controlled by a constitutional provision such as found in our Bill of Rights. And, inasmuch as the courts of other jurisdictions have uniformly held, as hereinbefore noted, that restrictions in the revenue articles of their Constitutions had no application to taxation of this nature, and that, therefore, the rule of equality therein provided for did not control the Legislature or courts, it is apparent that there is much weight to such claim of appellants if we hold that the section in our Bill of Rights does apply to such taxation. We consider this not an open question in this state. In Re Watson, supra, this court held

that the revenue article of the Constitution had no application to an occupation tax which was the tax then under consideration. The question arose as to whether the classification provided for by the statute before the court conflicted with the rule requiring equality in taxation. The court said: "In many jurisdictions an answer to this inquiry has been avoided on the ground that the rule is applicable only to ad valorem taxes on property. Such position cannot be taken in this state. The clause, 'and all taxation shall be equal and uniform,' found in the Bill of Rights, cannot be ignored. Constitutions are supposed to be prepared with much care and deliberation. It will not do to assume that such important instruments contain any idle or meaningless phrases. On the contrary, it may be presumed that every word was advisedly selected, inserted for a purpose, and intended to have its due weight in determining what organic principles have been established. In this state, then, taxes on occupations must be equal and uniform." Certainly the said constitutional provision applies to an inheritance tax as well as an occupation tax.

What, then, is the effect of this provision of our Constitution? The Supreme Court of Oregon has held that it does not prevent classification, but that when there is classification everything within a class must be governed thereby. Crawford v. County of Linn, 11 Or. 482, 5 Pac. 738. And this has also been held by this court. In re Waston, supra. It is well also to note the difference in wording between the two constitutional provisions. That found in Bill of Rights is "all taxation shall be equal and uniform." It will be noticed that this clause in no manner restricts the Legislature in the methods or rules for assessments and levies which it must follow in legislating. It leaves with the Legislature to determine the methods to be followed in order to render taxation uniform and equal. But the revenue article of the Constitution reads: "Taxes * * * shall be uniform on * * * property, according to its value in money, * * * so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property." Such provision absolutely prohibits any distinctions, between classes, in rates of levy,

whether such distinction were attempted upon a classification of persons, merely as persons, or upon the difference in ability to pay.

We are therefore of the opinion that our Constitution per-- mits under the Bill of Rights, not only classification, but pro- gression within classes, provided such classification and progres- sion are based upon proper foundation and result in substantial uniformity and equality. Classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classifi- cation. The equal protection demanded by the fourteenth amend- ment (federal Constitution) forbids this. · * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * In all cases it must appear, not only that a classification has been made, but also that it is based upon some reasonable ground— some difference which bears a just and proper relation to the at- tempted classification—and is not a mere arbitrary classification." On the other hand, in imposing taxes or duties of the nature now under consideration, there can only be equality where there is classification; in fact, absolute equality is an impossibility in this as in all taxation. As was said by this court in Re Watson, supra: "To determine the extent of contribution in each indivi- dual case, with equality and uniformity, is the design of every wise and just system of taxation. But so long as no two per- sons in the state are surrounded by precisely the same circum- stances, possessed of precisely the same ability to bear the burdens of taxation, no absolutely equal or just system of collecting reve- nues will be evolved. 'Perfectly equal taxation,' it has been said, 'will remain an unattainable good so long as laws and govern- ment and men are imperfect.' Grim v. School Dist., 57 Pa. 437, 98 Am. Dec. 237. Perfect equality is not possible. So we con- strue the clause requiring all taxation to be equal and uniform

as meaning, with reference to taxes on occupation, that the burden imposed shall fall alike on all persons who are in substantially the same situation—a rule generally recognized, even in the absence of an express constitutional requirement as to uniformity. Within the boundaries of this limitation lie broad fields of legislative discretion, which should not be invaded by the courts. In seeking to secure equality and uniformity, the Legislature may tax some trades, and not others; it may— indeed, must—classify occupations for the purpose of taxation; and the more exhaustive its system of arrangement, the more nearly similar will be the situation of all who are embraced within any designated class."

Whether we consider taking of property by succession a right or a privilege, it is founded upon ideas of right and justice deep-seated in the heart of every normal person. Certainly there is no inequality, in the law of succession, that gives a widow a greater exemption than is given to the son of a deceased person; or, in the law, that says property shall pass to near relatives in preference to those distant. In order to pass upon the question of equality, we must first determine the situation of the parties between whom it may be claimed an unlawful distinction has been drawn. It is certainly a greater privilege for a person, having no natural claims upon the deceased, to inherit his property, than it is for the wife or the child, that has perhaps helped to acquire such property, and who would, during the life of deceased, have been legally bound to support him if he was in need of support. It may well be said that it is against public policy to allow large fortunes to be held together by their transmission undivided upon death of owner—that it is a menace to the welfare of the country. This being true, it is then a greater privilege or right to take a large inheritance than a small, greater not merely in proportion to the value of the inheritance, but increasing out of such proportion, so that it can well be said that it is a greater privilege to take the second $10,000 of an estate than the first $10,000 thereof. Such matters as the above could certainly be considered by the

Legislature in determining what legislation would result in true "uniformity and equality." And under the rules hereinbefore quoted as laid down in Erye v. Jacobs, supra, and Davis v. State, supra, it is certainly not for us to overturn the work of the Legislature unless some feature of it must necessarily result in lack of uniformity or inequality. We have no hesitancy in pronouncing the classification based on kinship constitutional. Not so, however, the method for progression from transmissions of less to those of greater value.

An examination of the authorities will reveal that two methods of progression are provided for in the statutes of the several states: One, that found in this state wherein the higher rate, in case of transmission of a greater devise or bequest, is levied upon the whole value of property transmitted; the other, like that found in the Wisconsin statute, where the increased rate applies only to the excess, in value of property transmitted, over the amount subject to the next lower rate. The difference can readily be seen by changing the section of our statute, hereinbefore quoted, so that it would provide that the first $10,000 in value should be subject to rate of 4 per cent., the excess of $10,000 up to $20,000 6 per cent., the excess of $20,000 to $50,000 8 per cet., and all excess over $50,000 10 per cent. Must our statute, in its application, result in inequalities not consistent with any reason or theory upon which progression is allowable? It seems to be quite uniformly held by the courts that one fact to be urged in support of a progressive tax, progressing as the amount transmitted increases, is that the recipient of the larger amount is able to pay a larger rate of tax than the recipient of a smaller amount. Conceding this to be a resonable claim, can it be said that the increased ability to pay of a devisee receiving $20,000 over that of one receiving $10,000 comes from the receipt of his first $10,000? Certainly not, the increased ability to pay comes solely from the receipt of the second $10,000. It is ridicuious to say that a man who receives a devise or legacy of $10,001 is as well able to pay a tax of $594.06 as the man who receives $10,000 to pay $396. We have never discovered any method of making $1 pay $198.06.

As we have hereinbefore stated, another basis for a progressive tax, and one that seems to us the more reasonable, is the fact that, it being against public policy to allow large estates to be held together by transmission after death of owners, it is a greater privilege to inherit a larger than a smaller estate, which privilege increases in ratio greater than the increase in value of property inherited. But, as was said regarding the ability to pay as basis for progression, if one person receives $20,000 and another $10,000, it was no greater privilege for the first to receive his first $10,000 than for the second; the increased privilege is all found in the receiving of the extra $10,000, and it is the exercise of this extra privilege, the transmission of the extra $10,000, that should receive the extra burden of taxation.

It must be conceded that, if the Legislature can fix rates of taxation, it can increase such rates, and upon grounds of public policy it might place a limit in value above which all transmissions would go to the state. As rates would be raised, the inequalities in a law like ours becomes more apparent, as will appear from the following illustrations: Conceding that the state could pass a law taxing transmissions as follows: First $10,000, 10 per cent,; excess $10,000 to $20,000, 20 per cent.; excess $20,000 to $30,000, 30 per cent.; excess $30,000 to $40,000, 40 per cent.; excess $40,000 to $50,000, 50 per cent; excess $50,000 to $60,000, 60 per cent.; excess $60,000 to $70,000, 70 per cent.; excess $70,000 to $80,000, 80 per cent.; excess $80,000 to $90,000, 90 per cent.; excess $90,000, 100 per cent. Under such a law transmissions would net: $10,000, $9,000; $20,000, $17,000; $30,000, $24,000; $40,000, $30,000; · $50,000, $35,000; $60,000, $39,000; $70,000, $42,000; $80,000, $44,000; $90,000 and all above, $45,000. It will be seen that under the above system there must always be an increase in net benefit wherever there is a greater transmission. Suppose the law to apply the greater rate, as the law under consideration does, not merely to the excess, but to the whole transmission, then, taking the above amounts and rates, we would find that the transmissions would net as follows: $10,000, $9,000; $20,000, $16,000; $30,000, $21,000; $40,000,

$24,000; $50,000, $25,000; $60,000, $24,000; $70,000, $21,000; $80,000, $16,000; $90,000, $9,000; $90,001 or any sum greater net receipient $0. If further illustration of unsoundness of this plan of progression is needed, it is to be found in the following, in which we use higher rates than the law provides simply to make the unsoundness of the plan more apparent: Suppose the law made a rate of 25 per cent. if the estate did not exceed $10,-000, and 50 per cent. if above $10,000. A party dying possessed of $25,000, desiring to leave $7,500 net to each of two friends, could do so by leaving to each $10,000. He would have left $5,000. But let us suppose he desired to give one $7,500 net and the other $8,000 net; it would be absolutely impossible for him to give the extra $500. In fact, if he left his second friend over $10,000, such party would get net less than the one who got $10,000 unless he was left the whole balance of $15,000, when the two would net the same. From the $15,000 the second party would net the same as though he were left $10,000. If to the second were left $11,000, he would net $5,500 to the other's $7,-500. Certainly such classification cannot be justified. And we must remember that the underlying theory or plan is the same as in our law, and, if such a law as ours is constitutional, laws like the above illustrations must be held constitutional; the only difference being one of degree, as will be seen by taking two bequests to friends under law now before us, one bequest of $10,000, the other of $10,100. The first nets $9,604, the other $9,500, or $204 extra tax for transmission of $100 more property. If one bequest were $50,000, the other $50,001, the first would pay $3,992 tax, the second $4,990.10. Thus the recipient of the second bequest would pay $988.10 tax for privilege of receiving $1. To say that there is equaliity in our law would be like saying there was equality in a city ordinance under which the consumer of less than 1,000 cubic feet of gas a month would pay 90 cents per 1,000 feet, while the consumer of over 1,000 feet would pay 60 cents per 1,000, not merely on the excess over the first 1,000 feet but on the whole amount consumed; resulting in one paying 90 cents for 1,000 feet, the other 66 cents for 1,100

feet. No possible working of a normal mind could evolve any argument, or advance any reasons, to uphold such legislation, as against an attack upon the ground of producing unreasonable inequalities. Drew v. Tifft, supra; State v. Ferris, supra.

But it is urged that our statute is copied after that of Illinois, and that the Supreme Court of that state has upheld it (Kochersperger v. Drake, supra), and that the decision of that court has been affirmed by the Supreme Court of the United States. Magoun v. Ill. Trust & Savings Bk., supra. It is claimed that the holdings of these courts are of controlling force. Certainly, if it were a mere interpreting of words of the statute, the adoption of the Illinois statute, after it had been interpreted by the court of that state, would be presumed to carry with the adoption the interpretation put upon the words thereof. It must be remembered, however, that the courts of one state are not bound by any constitutional construction placed upon a law by the courts of the states from which the law came—and this even if the Constitutions were the same, and in this case the Constitutions vary greatly. An examination of the Magoun Case shows that the federal court simply adopted the construction of the law, so far as the state Constitution was concerned, placed upon such law by the state court, and in no manner passed upon the question now before us. It will be found that nearly or quite every case upholding a law similar to ours quotes the Magoun and Drake Cases as authority for such decisions, and, further, that they are in states without such constitutional restrictions as contained in our Bill of Rights. The Supreme Court of Colorado had presented to it a request for its views upon the Illinois law, and it expressed the same forcibly in Re House Bill No. 122, 23 Colo. 492, 48 Pac. 535; this opinion being after decision of Drake Case by nisi prius court and before decision by the Supreme Court. The Colorado court said: "Although an inheritance tax law of some kind is in force in very many states of the Union, the statute of the state of Illinois, from which this bill is mainly taken, is one of the most objectionable acts upon the subject to be found; and a nisi prius judge of that state has recently de-

clared it to be invalid, because it conflicts with certain constitutional provisions of that state." It is true that the Legislature of Colorado passed this law and the Supreme Court of that state upheld it in Re Magnes' Estate, 32 Colo. 527, 77 Pac. 853; but the court based their decision upon the Illinois cases and the Magoun Case, and did not enter into any discussion of their own, merely quoting the reasons given in the Magoun Case: "First, an inheritance tax is not one on property, but one on the succession; second, the right to take property by devise or descent is a creature of the law, and not a natural right, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the state may tax privileges, discriminate between relatives, and grant exemptions, and is not precluded from this power by the provisions of the respective state Constitutions requiring uniformity of taxation." If we read the case of Knowlton v. Moore, supra, aright, the federal Supreme Court has, in that case, virtually overruled the Magoun Case on second reason quoted, and laid down the rule that the fact the state has the right to control the transmission of property by devise or succession has nothing whatever to do with the power of the state to tax transmission of property, any more than the power to create corporations and to give them the right to do business, would empower a state to disregard its Constitution in taxing such business; or any more than the power to tax transfers of property, or issuance of check, etc, under Spanish War act, rested upon any right to transfer property or issue check given by state.

The case of Knowlton v. Moore construed the federal inheritance tax law, which law, so far as classification and progression are concerned, is in principle like the law before us, and such law was upheld. But a reading of such decision clearly indicates that, if the federal Constitution had contained a clause like that quoted from our Bill of Rights, the decision would have been the reverse. The federal law was attacked as unconstitutional, and we quote the following from the decision of the court: "The contention is that because the statute exempts leg-

acies and distributive shares in personal property below $10,000, because it classifies the rate of tax according to the relationship or absence of the relationship of the taker to the deceased, and provides for a rate progressing by the amount of the legacy or share, therefore the tax is repugnant to that portion of the first clause of section 8, art. 1, of the Constitution, which provides: 'The duties, imposts and excises shall be uniform throughout the United States.' The argument to the contrary, whilst conceding that the tax devised by the statute does not fulfill the requirement of 'equality' and 'uniformity,' *as those words arc construed when found in state Constitutions* (the underscoring is our), asserts that it does not thereby follow that the taxes in question are repugnant to the Constitution of the United States, since the provision in the Constitution that 'duties, imposts and excises shall be uniform throughout the United States' it is insisted has a different meaning from the expression 'equal and uniform,' found in state Constitutions. In order to decide these respective contentions, it becomes at the outset necessary to accurately define the theories upon which they rest. On the one side, the proposition is that the command that duties, imposts, and excises shall be uniform throughout the United States relates to the inherent and intrinsic character of the tax; that it contemplates the operation of the tax upon the property of the individual taxpayer, and exacts that, when an impost, duty, or excise is levied, it shall operate precisely in the same manner upon all individuals; that is to say, the proposition is that 'uniform throughout the United States' commands that excises, duties, and imposts, when levied, shall be equal and uniform in their operation upon persons and property in the sense of the meaning of the words 'equal and uniform,' as now found in the Constitutions of most of the states of the Union. The contrary construction is this: That the words 'uniform throughout the United States' do not relate to the inherent character of the tax as respects its operation on individuals, but simply requires that whatever plan or method Congress adopts for laying the tax in question, the same plan and the same method must be made operative throughout the United

States; that is to say, that wherever a subject is taxed anywhere, the same must be taxed everywhere throughout the United States, and at the same rate. The two contentions then may be summarized by saying that the one asserts that the Constitution prohibits the levy of any duty, impost, or excise which is not intrinsically equal and uniform in its operation upon individuals, and the other that the power of Congress in levying the taxes in question is by the terms of the Constitution restrained only by the requirement that such taxes be geographically uniform." Following the above is a discussion covering over 20 pages to show that the clause in the federal Constitution required uniformity between places and not between individuals. Certainly the federal court would not have entered into such a comprehensive review of the constitutional clause, both as regards its history and meaning, if it had not believed, as was conceded by those defending the law, that the statute did "not fulfill the requirements of equality and uniformity, as those words are construed when found in state Constitutions." If such court had believed that it was immaterial, so far as that case was concerned, whether the federal constitutional provision referred to place or person, it would certainly have said so. We therefore repeat that, if the federal Constitution had contained the clause found in our Bill of Rights, and the same referred to persons (as it does in the state Constitution), the court, in Knowlton v. Moore, supra, would not have sustained the federal law.

We are satisfied that with a classification such as found in our statute, and a rule of progression such as is found in the Wisconsin law, and which is followed in some other states, a statute would be constitutional.

Appellants attack the statute upon the ground that it is defective in its provisions pertaining to property transferred in contemplation of death, in that it fixes no personal liability on part of grantee for the taxes, it creates no lien on the property for the tax, and provides no proper remedy for recovery of judgment for taxes. The statute is certainly indefinite and ambiguous if not clearly defective, in these features. Inasmuch as new legislation

will be necessary, without dictating as to the nature of such legislation, we would suggest that, if it is to provide for taxation upon transmission of property in contemplation of death, it should clearly and distinctly provide for personal liability for such taxes on the part of the grantee; for a lien upon the property to secure such tax, such lien to rest on the property when same is held by the grantee or any other party, not an innocent purchaser for the value and without notice; and for an action, in a court of competent jurisdiction to recover judgment and enforce the lien.

The judgment of the circuit court is reversed, and said court is directed to enter judgment in favor of the appellants.

HANEY, J., dissenting.