## *In re* WATSON.

1. There are no limitations on the power of the Legislature except such as are imposed by the state and federal Constitutions, and no legislative act should be declared unconstitutional unless it palpably conflicts with some principal of constitutional law.

2. Const, art. 11, § 2, declaring that all taxes shall be uniform on all real and personal property according to its value in money, to be ascertained by rules prescribed by general law, when construed with article 6, § 17, requiring that all taxation shall be equal and uniform, and article 11, § 3, declaring that the power to tax corporations and corporate property shall not be surrendered, requires all property not expressly exempted by the Constitution to be taxed according to its value, but does not by implication preclude other methods of taxation, such as taxes on occupations.

3. Const. art. 6, § 17, declaring that all taxation shall be equal and uniform, means, with reference to taxes on occupations, that the taxes imposed shall fall alike on all persons who are in substantially the same situation; and therefore the Legislature may classify occupations for the purpose of taxation, and tax some and exempt others.

4. Laws 1903, p. 249, c. 190, imposing a license on peddlers dealing in goods, wares or merchandise, "except nursery stock, agricultural products, including milk, butter, eggs, and cheese," and providing that the act shall not apply to traveling salesmen doing business with retailers or with public officers, if construed as imposing a tax on occupations under the taxing power, imposes a tax on all persons embraced within a class, based on a classification conforming to natural and well-recognized lines of distinction, and is therefore not in conflict with article 6, § 17, declaring that all taxation shall be equal and uniform.

5. The statute if considered as an exercise of the police power of the state, is not in conflict with Const. art. 6, Sec. 18 providing that no law shall be passed granting to any citizen privileges and immunities which on the same terms shall not equally belong to all citizens.

(Opinion filed December 9, 1903.)

Appeal from circuit court, Minnehaha county. Hon. Jo-
SEPH W. JONES, Judge.

Writ of habeas corpus proceedings by James Watson for
his discharge from custody under a commitment issued on his
conviction of peddling without a license. From a judgment
directing his release from custody the state appeals. Reversed.

*W. D. Scott*, State's Attorney, and *C. O. Bailey*, for the
State.

Under the general police powers of the state an act regu-
lating peddlers and requiring a license fee is not unconstitu-
tional; City of St. Paul v. Briggs, 88 N. W., 984; Racine Iron
Co. v. McCommons, 51 L. R. A., 134; Howe Machine Co. v.
Gage, 100 U. S., 676; Am Refrigerator Co. v. Hall, 174, U. S.,
70; Price Co. v. Atlanta, 105 Ga., 358; Boler v. Snyder, 49
Ga., 105; Henry v. State, 26 Ark., 523; Ottawa v. Nelson, 19
Kas., 234; Fretwoll v. Troy, 18 Kas., 271.

Under the general requirement that all taxations should
be uniform and equal it is not necessary that all occupations
shall be taxed, but it is sufficient that all in the same class
are taxed alike. Fahey v. State, 11 Am. St. Rep., 182; Gatlin
v. Tarbora, 78 N. C., 119; Slaughter v. Com., 13 Grattan, (Va.),
776; People v. Pullman, 4 Cal., 46; Strobb v. Gordon, 27 Ark.,
625.

The soverignity may in its discretion levy a tax on every
species of property within its jurisdiction, and what is true of
property is true of privileges and occupations also. The state
may tax all or it may select for taxation certain classes and
leave the others untaxed. Cooley on Taxation, page 570.

The peddlers and transient dealers are commonly taxed
a specific amount by the year because otherwise they are liable

to escape taxation altogether. A peddler's tax is on the occupation and not on the goods sold, and anyone who engages in such business must pay such tax. Cooley on Taxation, 575. See also Youngblood v. Sexton, 32 Mich., 406; Plueler v. State 11 Neb., 547; Savannah v. Weed, 84 Ga. 683; Singer Mfg. Co. v. Wright, 33 Fed. 121; New Orleans v. Kaufman, 29 Am. R. 328; Hodgson v. New Orleans, 21 La. Ann. 301; Meriam v. New Orleans, 14 La. Ann. 318; Ex Parte Hurle 49 Cal. 557.

*Joe Kirby*, for respondent.

An act defining peddlers; requiring them to take out a license; fixing the fee therefor, and providing penalties for the violation thereof, Session Laws of 1903, violates Sections 17 and 18 of the Bill of Rights of Constitution of South Dakota. State v. O'Conner, 67 N. W. N. D. 824; State v. Garbroski, 82 N. W. 959; Cooper v. Ash, 76 Ill. 11; Rogers v. McCoy, 6 238; State v. Rankin, 11 S. D. 144; State v. Kletson, 78 N. W. 984; St. Paul v. Briggs, 88 N. W. 984; People v. Russell, 14 N. W. 568.

HANEY, P. J. This proceeding, instituted in the circuit court by James Watson to secure his discharge from custody under a warrant of commitment issued by a justice of the peace upon a conviction on the charge of dealing as a peddler without a license, resulted in his release, and the state appealed.

It is contended that the act upon which the conviction was based is unconstitutional, and such was, we assume, the view of the learned circuit court, as it seems to have been conceded that the proceedings before the justice were in all respects regular and within the terms of the statute. The act, the validity of which is thus attacked, is as follows:

"Section 1.   Whoever shall deal in the selling of goods, wares or merchandise, except nursery stock, agricultural products, including milk, butter, eggs and cheese, by going about from place to place to sell the same, is declared to be a peddler, provided, that this section shall be intended to include among those required to obtain a license as peddlers all such persons as are transient merchants, traders or dealers; such persons as bring into any town, city or village in any manner goods, wares, merchandise, notions or other articles of trade except such as are excepted in this section, for the purpose of selling the same in the manner provided in this section, and do not become permanent merchants, traders or dealers in such town, city or village; permanent merchants, traders and dealers being here defined to be those who pay taxes in the county where the business is carried on upon their goods, wares, merchandise or other articles of trade the same as other resident dealers.

"Sec. 2.   No person shall deal as a peddler without a license issued annually and no two or more persons shall deal under the same license as partners, agents or otherwise.

"Sec. 3.   Every license shall state the manner in which the dealing is carried on whether on foot or with one or more beasts of burden, the kind of cart, wagon or carriage, or if on water the kind of boat or vessel to be employed, and shall be in force and effect for one year from the date of issue and shall apply and be effectual only in the county in and by which it is issued.

"Sec. 4.   Any person may obtain a peddler's license by applying to the county auditor of the county in which he wishes to carry on his trade, and by paying the amount herein provided for said license.

"Sec. 5. Every such applicant before he shall be entitled to such license shall pay the county auditor the following license fees: If he intends to travel by bicycle or on foot, including railroad or other public conveyances, but carry with him his goods, wares or merchandise, twenty dollars; if he intends to travel and carry his goods with a single horse or other beast carrying or drawing a burden, thirty-five dollars; if he intends to travel with a vehicle or carriage drawn with two or more horses or other animals, fifty dollars; if he intends to deal as a transient merchant, trader or dealer, seventy-five dollars, provided, that any such applicant taking license as such transient merchant, trader or dealer shall in addition to the amount paid for such license also pay to the authorities of the said town, city or village where he may sell or offer for sale any goods, wares or merchandise, a sum not exceeding fifty dollars per day for each day that such person may be engaged in selling or disposing of any such goods, wares or merchandise to be determined by ordinance or resolution of the town, city or village where he may engage in business aforesaid, which ordinance or resolution shall provide when and in what manner such per diem shall be paid.

"Sec. 6. All sums received by the county auditor for peddlers' license shall be by him deposited with the county treasurer and covered into the county general fund for use of the county.

"Sec. 7. Any person who shall be found dealing as a peddler without having paid and received the license herein specified, or who shall, upon demand of any sheriff, constable or any householder of the county, refuse to produce his license and permit the same to be read, shall be deemed guilty of a

misdemeanor and upon conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars.

"Sec. 8. The provisions of this act shall not apply to traveling salesmen doing business with retail merchants, manufacturers or jobbers, or with state, county, township and city officials, whether they carry samples or not."

Laws 1903, pp. 249, 250, c. 190.

The accused was charged with dealing in goods, wares and merchandise not excepted by the statute, by going about from place to place to sell the same, in a vehicle drawn by two horses, without having procured the required license. Therefore for the purpose of this appeal, his case will be regarded as falling within the first class of occupations defined in Section 1, and the statute will be considered only with reference to its effect on the particular business in which he was engaged. State v. Church, 6 S. D. 89; 60 N. W. 143; State v. Mitchell, 3 S. D. 223, 52 N. W. 1052; State v. Becker, 3 S. D. 29, 51 N. W. 1018. And in thus considering the enactment, it should be constantly borne in mind that there are no limitations upon the legislative powers of the Legislature in this state, except such as are imposed by the state and federal Constitutions; that no legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity; and that, where the language of a statute is susceptible of any reasonable construction which is consistent with the Constitution, that interpretation will be given it.

Without deciding whether the burden imposed by this stat-

ute upon persons engaged in the business of going from place to place to sell goods, wares and merchandise is a tax or a license—without deciding whether we are dealing with an exercise of the taxing power or of the police power—we will proceed to consider the act with reference to the limitations upon each.

If the burden imposed is a tax, it is a tax on the occupation, not on the goods sold. It could not be otherwise regarded in this state, and be sustained, as the Constitution requires all real and personal property to be taxed "according to its value in money." Const. art. 11, § 2. It appears to be the concurrent voice of all the authorities that in the absence of any inhibition, express or implied, in the Constitution, the Legislature has power to either directly levy and collect license taxes on any business or occupation, or to delegate like authority to a municipal corporation. City of Newton v. Atchison, 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486. In this state all legislative power, save as restricted by the state and federal Constitutions, is vested in the Legislature. Taxation is a legislative power. There is no inherent vice in the taxation of vocations. On the contrary, business is as legitimate a subject of taxation as property. City of Newton v. Atchison, supra. Then the question arises whether our state Constitution either expressly or impliedly inhibits taxes on occupations. Section 2, art. 11, reads as follows: "All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may be prescribed by the Legislature by general law, so that every person and corporation shall pay a tax in proportion to the value

of his, her or its property. And the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be by the same methods as are provided for assessing and levying of taxes on individual property." Though numerous other state Constitutions have similar provisions, reasonably exhaustive research has disclosed none expressed in the same language. The phraseology of the foregoing section appears to be peculiar to this state, and is not, it must be confessed, entirely free from apparent ambiguity, as a cursory reading might convey the impression that it was intended to limit all taxation to taxes on property. We think, however, that a careful consideration of the section in connection with other portions of the Constitution compels the conclusion that such was not the intention. We are satisfied the section should be construed as requiring all property not expressly exempted by the Constitution to be taxed according to its value, but that it does not, even by implication, preclude other methods of raising revenue. If it was intended to restrict taxation to burdens on property alone, the rules regulating the subject found in article 11 were sufficient, and the clause of the Bill of Rights declaring that "all taxation shall be equal and uniform" (Const. art. 6, § 17) was inappropriate and unnecessary. Again, it is declared that "the power to tax corporations and corporate property shall not be surrendered," etc. Const. art. 11, § 3. If the power to tax corporations as well as corporate property exists, the same power must exist as to natural persons; otherwise all taxation could not be equal and uniform. In discussing constitutional provisions on the subject of taxation as nearly analogous to those in this state as any we have noticed, the Supreme

Court of Ohio employed the following language: "The second section requires the taxing of all property by a uniform rule. A license cannot be regarded as property. It is not, therefore, to be taxed as property under that section. An express direction to impose a tax on all property by a uniform rule does not necessarily exclude taxation upon that which is not property, or cover the whole ground included within the limits of the taxing power." Baker v. City of Cincinnati, 11 Ohio St., 534. This view has been expressly approved in Kansas, and is, we believe, generally accepted. City of Newton v. Atchison, supra; Cooley, Tax, 570. So, on principle and authority, we conclude that the Legislature of this state has power to impose taxes on occupations.

Does the statute, considered as an exercise of the taxing power, conflict with the rule requiring equality and uniformity? In many jurisdictions an answer to this inquiry has been avoided on the ground that the rule is applicable only to ad valorem taxes on property. Such position cannot be taken in this state. The clause, "and all taxation shall be equal and uniform," found in the Bill of Rights, cannot be ignored. Constitutions are supposed to be prepared with much care and deliberation. It will not do to assume that such important instruments contain any idle or meaningless phrases. On the contrary, it must be presumed that every word was advisedly selected, inserted for a purpose, and intended to have its due weight in determining what organic principles have been established. In this state, then, taxes on occupations must be equal and uniform. What is meant by "equality and uniformity" in this connection? The Legislature is not commanded to tax all occupations. To levy the same amount of tax on each

trade, occupation or business in the state would be manifestly impracticable and unjust. No more effectual method of defeating the real purpose of the rule could be devised. Every person, natural and artificial, whether possessing property or not, enjoys the protection of the government, and should contribute to its support. To determine the extent of contribution in each individual case, with equality and uniformity, is the design of every wise and just system of taxation. But so long as no two persons in the state are surrounded by precisely the same circumstances, and possessed of precisely the same ability to bear the burdens of taxation, no absolutely equal or just system of collecting revenues will be evolved. "Perfectly equal taxation," it has been said, "will remain an unattainable good so long as laws and government and men are imperfect." Grim v. School Dist., 57 Pa., 437, 98 Am. Dec. 237. Perfect equality is not possible. So we construe the clause requiring all taxation to be equal and uniform as meaning, with reference to taxes on occupations, that the burden imposed shall fall alike on all persons who are in substantially the same situation— a rule generally recognized, even in the absence of an express constitutional requirement as to uniformity. Within the boundaries of this limitation lie broad fields of legislative discretion, which should not be invaded by the courts. In seeking to secure equality and uniformity, the legislature may tax some trades, and not others; it may—indeed, must—classify occupations for the purpose of taxation; and the more exhaustive its system of arrangement, the more nearly similar will be the situation of all who are embraced within any designated class. Under the statute we are considering, every one en-

gaged in the business of going from place to place to sell goods,
wares or merchandise, other than nursery stock and certain
agricultural products, to persons other than retail merchants,
manufacturers, jobbers, state, county, township and city offi-
cers, is required to annually contribute to the general fund of
the county in which such business is conducted, $20, $35, or $50
depending on his mode of traveling. The word "peddler," in
its ordinary sense, means "a traveling trader; one who travels
about, retailing small wares." Web. Dict. The class to which
the accused belongs, as described in the statute, embraces all
persons who are peddlers, in the ordinary sense of the term.
One who delivers milk or young trees is not usually spoken of
as a peddler. The meaning of the phrase "goods, wares and
merchandise" depends upon the connection in which it is em-
ployed. The eighth section of the act, when properly inter-
preted, does not exclude from the operation of the law any one
dealing as a peddler, in the ordinary acceptation of the term.
The selling of material or supplies to retail merchants, manu-
facturers and jobbers, to be used in their business, or the sel-
ling of supplies to public officers for the use of the public,
does not constitute the business of the ordinary peddler; and it
is only such sales that fall within the exception. When a re-
tail merchant or state officer is approached by a peddler with
an article intended for his individual use, he stands in precisely
the same position as does every other person in the state under
the same circumstances. So we say the class, as described in
the statute, embraces all persons engaged in what is usually
regarded as the business of peddling; that the method of
classification adopted conforms to natural and well recognized
lines of distinction; and that the burden imposed falls alike,

within the meaning of the constitution, on all who follow the same vocation.

There is another view perhaps equally convincing. It is this: The legislative classification may be founded on the nature of the articles sold, as well as on the manner of conducting the business. Hence peddlers may with propriety and justice be divided into classes, with reference to the kinds of goods, wares, and merchandise in which they deal. As stated by the supreme court of North Carolina: "A tax on trades must be considered uniform when it is equal upon all persons belonging to the described class upon which it is imposed. Burroughs on Tax. § 77. It may be different upon a dealer in whisky by retail from that of a wholesale dealer, or on a dealer in whisky from what it is on a dealer in grain. So it does not cease to be uniform because it is $1 on all traders who sell to the amount of $1,000 in a quarter, they being one class, and $4 on all who sell to the amount of $4,000 in the same time, who form a different class." Gatlin v. Town of Tarborno, 78 N. C. 119. If this be so, all who peddle musical instruments may constitute a class, which may be taxed without imposing the same burden, or any burden whatever, on persons who peddle sewing machines. As has been said, the legislature is not required to tax all occupations. It may from time to time, as circumstances seem to demand, select one or many occupations as subjects of taxation. So far as the rights of the accused are concerned, it has in this case provided that all persons who go from place to place in a vehicle drawn by two or more horses, or other animals, to sell any goods, wares or merchandise, other than nursery stock and agricultural products, shall annually contribute $50 to the general fund of each county

17 S. D.—32

in which they do business. The effect is the same as if all kinds of goods, wares, and merchandise, except nursery stock and agricultural products, were named in the statute. The legislature has merely omitted to tax the business of selling nursery stock and the business of selling each of the agricultural products mentioned in the act. Such omission does not invalidate the act it has passed, unless it is required to tax all occupations if it attempts to tax any. As all persons dealing in the same articles in the same manner as the accused—as all persons in substantially the same situation—are required to bear the same burden, we conclude that the statute, considered as an exercise of the taxing power, does not conflict with the rule requiring all taxation to be equal and uniform.

Consideration of the statute as an exercise of the police power leads to the same conclusion. It is, of course, conceded that the business of peddling may be regulated, but counsel for the accused contends that this act discriminates in favor of peddlers who deal in nursery stock and agricultural products, and therefore violates article 6, § 18, of the state Constitution, which reads as follows: "No law shall be passed granting to any citizen, class of citizens or corporation privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." This and other inhibitions of class legislation received consideration in Bon Homme county v. Berndt, 13 S. D, 309, 83 N. W. 333, 50 L. R. A. 351; Id., 15 S. D. 494, 90 N. W. 147. In that case the law making the expense incurred by a county in caring for an insane person a charge against his estate, where such insane person has no heirs within the United States dependent on such estate for support, was sustained on the ground that it made no discrim-

ination in favor of any person within the class designated. In Washington it was insisted that an ordinance was void because it imposed a burden upon a portion, and not the whole, of a class of merchants. · Holding this contention untenable, the Supreme Court of that state said: "The ordinance does apply to all merchants who see fit to engage in the business of buying tickets of that kind, and the constitutional provision that no laws shall be passed granting to any citizen, class of citizens, or corporations. other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations, cannot be invoked against this ordinance. The adjudicated cases in this respect are so numerous that it is scarcely worth while to mention them here." Fleetwood v. Reed, 58 Pac. 665, 47 L. R. A. 205. It was argued in a recent case in Illinois, where the constitutional limitations are substantially the same as here, that a statute was invalid, as discriminating between commission merchants, because it excepted those who deal in grain, live stock, and dressed meats. Concerning such contention, the Supreme Court of that state employed the following language: "The claim is that produce commission merchants constitute a class, and that the Legislature must require a license from all or none. This objection to the law is not valid. The Legislature have power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. The discrimination must rest upon some reasonable ground of difference, but the classification in this case is a natural one." Lasher v. People, 183 Ill. 226, 55 N. E. 663, 47 L. R. A. 802, 75 Am. St. Rep. 103.

As we have endeavored to show, the classification adopted

by the Legislature in the statute under consideration is neither unnatural, unreasonable, nor arbitrary; the burden imposed falls alike on all belonging to the class; and viewed either as a tax or license, the law must be sustained on this appeal. We think the learned circuit court erred in discharging the accused from custody.

The order appealed from is reversed.