QUEEN CITY FIRE INS. CO. v. BASFORD et al.

The power of the court to declare a statute unconstitutional should only be exercised in a case free from all reasonable doubt.

The state may permit a foreign corporation not engaged in interstate commerce to do business within its limits on such conditions as it may see fit to impose.

The state may impose an annual occupation tax on foreign insurance companies doing business in the state based on the gross amount of premiums received in the state during the preceding year.

The state may classify insurance companies and impose on them different rates of occupation taxes.

Laws 1907, c. 65, imposing on every insurance company doing business in the state, except domestic mutual insurance companies, an annual tax of 2½ per cent of the gross amount of premiums received in the state during the preceding year, etc., when construed in the light of the history of the legislation on the subject, imposes an "occupation tax" and not an "ordinary tax" within the Constitution relating to taxation.

Under Const. art. 11, §§ 2, 3, requiring uniformity in taxation according to value, and declaring that the power to tax corporations and corporate property shall not be surrendered, Laws 1907, c. 65, imposing on insurance companies an annual tax on the gross premiums received in the state during the preceding year, which sum shall "be in full of all taxes, state and local, from such insurance company," relates solely to taxes on the corporations, and does not affect taxes on corporate property, and the exemption does not include the tangible property of insurance companies, and is valid.

The Legislature in levying occupation taxes on corporations may distinguish between different classes of corporations, and Laws

1907, c. 65, classifying insurance companies, and imposing on them different rates for an annual occupation tax, is valid.

The exercise by the Legislature of the power to impose occupation taxes is within the discretion of the Legislature and cannot be questioned by the courts.

(Opinion filed, Feb. 23, 1911.)

Appeal from Circuit Court, Minnehaha County. Hon JOSEPH W. JONES, Judge.

Action by the Queen City Fire Insurance Company against O. S. Basford and others. From a judgment for plaintiff, defendants appeal. Reversed.

*S. W. Clark, Atty. Gen.,* for appellants.

The commissioner of insurance is the officer of the state who is charged with the supervision of insurance companies and whose duty it is to see that the laws of the state respecting insurance companies are faithfully executed. Sec. 153 and 154, Pol. Code of 1903. He is authorized to grant certificates of authority to fire insurance companies, and to revoke a certificate once granted. A privilege or business tax may be imposed, in the discretion of the Legislature, upon any selected classes of business—and it may leave others untaxed. Cooley on Taxation, vol. 2, p. 1094. The method in which a business may be taxed is within the discretion of the legislature. The taxes most customary are: 1. On the privilege of carrying on business. 2. On the amount of business done. 3. On the gross profits of the business. 4. On the net profits of the business. Cooley on Taxation, vol. 2, p. 1095. Cooley on Taxation, vol. 1, p. 702. The power to tax corporations and corporate property shall not be surrendered. State Const., Art. 11, Sec. 3. The constitution, requiring all property not expressly exempt to be taxed, does not by any implication preclude other methods of taxation such as taxes on occupations. In re Watson, 17 S. D. 486. No legislative act should be declared unconstitutional unless it palpably conflicts with some principle of constitutional law. In re Watson, 17 S. D. 486; N. W. Mut. Life Ins. Co. v. Lewis and Clarke County, 98 Am. St. Rep. 572.

*U. S. G. Cherry,* for respondent.

The act of 1907 is a revenue measure. It declares in its title that it is an act relating to the *taxation* of fire insurance com-

panies. It specifically provides that the insurance companies affected thereby shall pay the moneys required to be paid into the state treasury *as taxes*. It provides that if the sum therein required is paid it shall be in full of all *taxes, state* and *local* from such insurance company. It is not a mere license law or police regulation. The act is for revenue purposes. Grigsby v. Buechler, 10 S. D. 156; Raymond v. Hartford Fire Ins. Co., 196 Ill. 329; Reser v. Umatilla County, 86 P. 595; Elles v. Frazier, 53 L. R. A. 454; State v. Whieter, 35 Neb. 401, 213; In re Watson, 17 S. D. 486; Chicago v. Collins, 175 Ill. 445; Kiowa County v. Dunn, 21 Colo. 185; San Francisco v. Insurance Co., 74 Cal. 113; Galveston H. & S. A. Ry. Co. v. Davidson, 93 S. W. 436. The tax is two and one-half per cent of the *gross amount* of *premiums received* in this state during the *preceding year*, out of property *already in hand* the state exacts a certain percentage. It is not only a tax, but a tax on property. A tax upon gross earnings, upon gross premiums or upon the income of capital or property is a tax upon the property itself. Cook v. Pennsylvania, 97 U. S. 566; Fargo v. Stevens, 121 U. S. 230; Philadelphia S. S. Co. v. Pennsylvania, 122 U. S. 326; Pollock v. Farmers L. & T. Co., 157 U. S. 581; Galveston H. & S. A. Ry. Co., 93 S. W. 436, 444; Parker v. North British Ins. Co., 42 La. An. 428; Vermont & Canada R. Co. v. Vermont Central R. Co., 21 Atl. 262; Western Union Tel. Co. v. Attorney General, 125 U. S. 530; Postal Tel.-Cable Co. v. Adams, 155 U. S. 688; State v. Wheeler, 35 Neb. 401, 17 L. R. A. 383, 53 N. W. 213. A franchise is property, and the act does not follow the methods prescribed for the taxation of property. Philadelphia S. S. Co. v. Pennsylvania, supra; Galveston H. & S. A. Ry. Co. v. Davidson, supra; Parker v. North British Ins. Co., 42 La. An. 428. A lower rate of taxation upon one form of doing business than another where both are engaged in the same occupation violates the constitutional rule as to equality and uniformity required in "all taxation." Pollock v. Farmers L. & T. Co., supra; Pullman Palace Car Co. v. State, 64 Tex. 274; Association v. Keith, 153 Ill. 609; Ex parte People's Loan & Building Assn., 153 Ill. 655; Masonic Aid Assn. v. Taylor,

2 S. D. 324; Commonwealth v. Wetherbee, 105 Mass. 160; County of San Bernardino v. Southern Pac. R. Co., 118 U. S. 417; Union Insurance Co. v. Hoge, 62 U. S., 21 How. 35; People v. Nelson, 43 N. Y. 477; Civil Code, Secs. 614-685, 578-613; Life Association v. Board of Assessors, supra.

CORSON, J. This action was instituted by the plaintiff, a fire insurance company, organized and existing under the laws of this state, to enjoin the collection by the defendant Basford, insurance commissioner of this state, of the 2½ per cent. tax upon plaintiff's gross earnings provided for by chapter 65, § 1, of the Session Laws of 1907, and also to enjoin the other defendants from the collection of taxes imposed by the local authorities of Minnehaha county upon the tangible property of plaintiff corporation; and, the judgment of the circuit court being in favor of the plaintiff and against the said Basford as insurance commissioner, he has appealed to this court. The defendants interposed demurrers to the complaint, and, the demurrer of defendant Basford being overruled, he elected to stand upon his demurrer, and judgment was thereupon rendered against him. The complaint sets out the laws and proceedings of the insurance commissioner and alleges the same was in violation of the state Constitution.

The law under which the commissioner was proceeding to collect the 2½ per cent. upon said insurance company is contained in chaper 65, § 1, of the Laws of 1907. The material parts of the section, as applicable to this controversy, read as follows: "Every fire insurance company doing business in this state, except mutual companies organized under the laws of this state, shall, at the time of making the annual statement, pay into the state treasury as taxes two and one-half per cent. of the gross amount of premiums received in this state during the preceding year, * * * and the said sum of two and one-half per cent. shall be in full of all taxes, state and local, from such insurance company. Provided, that all mutual companies organized or operating under the laws of this state shall, at the time of making the annual statement, pay into the state treasury as taxes one per cent. of the gross amount of premiums received in this state during the pre-

ceding year upon policies issued on property in any city, town or village having an organized fire department as provided in article 5, chapter 16, Political Code of 1903."

It is contended by the plaintiff and respondent that this law is unconstitutional, in that it violates certain provisions of the state Constitution relating to assessment and levy of taxes, and in that it exempts all other taxation upon insurance companies so paying the 2½ per cent. as provided by the section; the theory of the plaintiff being that the 2½ per cent. specified in the section to be paid by the insurance companies is a tax levied upon said companies, and that the exemption from taxation provided for was intended to include all the tangible property of the corporation, including both real estate and personal property.

On the other hand, it is contended by the appellant that the 2½ per cent. provided for in the section to be paid by insurance companies is not levied upon them as a tax in the ordinary meaning of that term, but is in the nature of an occupation or license tax imposed upon such companies, and therefore it does not come within the provisions of the Constitution applicable to ordinary taxation, and that the exemption clause does not have the effect of exempting the corporations from the payment of taxes upon their tangible property.

It will thus be seen that the only question to be considered on this appeal is as to the constitutionality of the act of 1907. The power of the court to declare an act of the Legislature unconstitutional is an extraordinary power and should only be exercised in a case free from all reasonable doubt. Such has been the rule uniformly held by this court. State v. Becker, 3 S. D. 29, 51 N. W. 1018; Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147; In re Watson, 17 S. D. 486, 97 N. W. 463.

The original section as enacted in 1885 reads as follows: "Every insurance company doing business in this territory, except in joint-stock and mutual companies organized under the laws of this territory, shall, at the time of making the annual statement, as required by law, pay into the (territorial) state treasury, as taxes, two and a half per cent. of the gross amount

of premiums received in this territory during the preceding year, taking duplicate receipts therefor, one of which shall be filed with the Auditor; and upon the filing of said receipts—not until then— the said Auditor shall issue the annual certificate as provided by law; and the said sum of two and a half per cent. shall be in full of all taxes, state (territorial) and local." Chapter 69, § 40, Laws 1885.

This section, with two or three slight changes not material to this controversy, remained as the law of the territory and state, constituting section 675 of the Civil Code of 1903, until its amendment in 1907. The effect of the amendment of 1907, it will be noticed is simply to make the law applicable to all fire insurance companies, and to include insurance corporations organized under the laws of this state, as well as foreign fire insurance companies, and to impose a tax of 1 per cent. upon mutual insurance companies organized within this state, both of which were excluded under the section as it was originally enacted and carried into the Code of 1903. Practically, therefore, the law that we are required now to hold unconstitutional has been in force and acted upon for the past quarter of a century so far as it applies to corporations organized without the state.

The law, so far as relates to imposing an occupation or license tax upon foreign insurance corporations, is settled by the decision of the Supreme Court of the United States in Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, in which that learned court speaking by Mr. Justice Field, says: "The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank of Augusta v. Earle: 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recogni-

tion and enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

This decision has never been overruled by the Supreme Court of the United States or questioned by that learned court other than to limit it to corporations not engaged in interstate commerce. Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1, 24 L. Ed. 708. The power of the Legislature to impose the payment of such a tax upon foreign corporations does not seem to be seriously questioned by the respondent in this case.

The power vested in the Legislature to impose an occupation or license tax upon the business of parties or corporations within the state was very fully discussed by this court in the case of In re Watson, supra, and in our opinion the decision in that case, in effect, clearly establishes the right of the Legislature to classify insurance corporations and impose an occupation or license tax upon such corporations organized within the state, and, as the questions here involved were so fully considered and discussed in that case, we do not deem it necessary to again enter upon a discussion of the same.

It seems to have been the theory of the plaintiff and respondent in this action, and the entire argument of the learned counsel for the plaintiff seems to be based upon the theory before stated, that the occupation or license tax provided for by the section, is to be regarded as an ordinary tax upon the corporation. Clearly under the decision of In re Watson, supra, such a theory is without foundation and cannot be supported, and the original law as enacted in 1885 clearly disproves such a theory as section 40 of the law in which that section is contained is found in chapter 69 of the Laws of that year, and is entitled "An act to revise and amend article 11 of chapter 3, title 2 of part 3 of

division second of the Civil Code, entitled 'Insurance Corporations,'" and the whole chapter is devoted solely to the organization and powers of insurance companies; and the section, as found in the Revised Code of 1903, is in the law relating solely to insurance corporations.

While the fact that the section originally was in the insurance law and was carried into the insurance law of 1903 is not conclusive, it is certainly very strongly indicative of the intention of the Legislature to impose the tax as an occupation or license tax and not as a part of the taxes to be derived under the revenue laws of the territory or state. And the fact that the form of the tax is upon the gross amount of premiums received clearly indicates that it was not intended by the Legislature to impose a property or ordinary tax within the provisions of the general law taxing property, and we may reasonably conclude that the Legislature of 1907, in amending the law, had no intention the same should apply to ordinary taxes. The contention therefore of the plaintiff and respondent that the law is in conflict with various sections of the Constitution of this state relating to taxation of property generally is without merit, as those sections, as is clearly shown by the opinion of In re Watson, have no application to an occupation or license tax.

The only serious question, therefore, presented on this appeal, is as to that provision of the law which provides: "And the said sum of two and one-half per cent. shall be in full of all taxes, state and local, from such insurance company."

It is contended by the respondent that, under the terms of this clause of the section, the state is without power to collect further taxes upon the property of fire insurance corporations, notwithstanding they may be possessed of much real and personal property within the state, and hence in making this exemption the law is rendered clearly unconstitutional, in that the Constitution prohibits such exemption.

It is contended, however, by the appellant that inasmuch as the Constitution makes a distinction between the taxing of corporations and the taxing of corporate property, and inasmuch as

it is obvious that the Legislature, in passing the act referred to, was dealing exclusively with the tax on insurance corporations and not the corporation's property, the proper construction of the clause referred to is that it relates solely to taxes on the corporations, as such, and not in any way to taxes on their corporate property. We are of the opinion that the appellant is right in this contention, and that the clause should be construed as the words clearly indicate, that the 2½ per cent. shall be in full of all corporation licenses or business taxes and does not refer nor include taxes assessable upon the property of the corporation which, of course, must be assessed and taxed like all other real and personal property within the state. It certainly could not have been the intention of the Legislature, in the adoption of this provision, either as originally adopted or as found in the Laws of 1907, to exempt an insurance corporation that had thousands or tens of thousands of dollars invested in real or personal property, that such corporation should not be assessed and taxed for such property as well as other corporations within the state.

Section 2 of article 11 of the Constitution provides that: "All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, * * * so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." And by section 3 it is provided: "The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state shall be a party."

It will be observed that by the provisions of section 3 a distinction is made between the power to tax corporations and corporate property. It is quite clear, therefore, that while corporations, as such, may be required to pay an occupation or license tax and may be exempted, upon the payment of such tax, from further occupation taxes or license taxes, such exemption in no manner affects the power to tax the corporate property. Such property is to be assessed and taxed the same as property of individuals. Hence it is quite clear that it was not the intention of the Legislature to exempt insurance corporations from the payment of taxes

on their tangible corporate property, but only to exempt the corporation, as such, from the payment of further occupation or license taxes, either to the state or municipalities, as the language of the section, "shall be in full of all taxes, state and local, from such insurance company." Thus limited, the exemption was clearly within the power of the Legislature, and the clause, construed as evidently intended it should be, is not unconstitutional.

It is the further contention of the respondent that there is a distinction between joint-stock and mutual insurance companies organized within the state, and therefore that the law is unconstitutional. There is clearly no merit, however, in this contention, as it was perfectly competent for the Legislature, in levying occupation or license taxes, to distinguish between the different classes of corporations, as well as different classes of occupations.

Conceding to the Legislature the power to impose occupation or license taxes, the exercise of that power is a matter within its discretion, and cannot be questioned by the courts. In our view, therefore, the law in controversy in this action is clearly constitutional, and the decision of the circuit court holding otherwise cannot be sustained.

The learned counsel for the plaintiff and respondent has cited and quoted from a number of decisions in support of the theory advanced by it in the presentation of this case; but the decisions upon this question are based so largely upon the peculiar Constitutions found in the different states, and discussed by the courts, and are so conflicting, that a review of them in this opinion would serve no useful purpose, and we therefore omit such a review.

We are clearly of the opinion, as before stated, that the law we are considering applies only to occupation or license taxes, and that it was not the intention of the Legislature, in imposing this tax, to exempt the tangible property of corporations from taxes upon their real or tangible property, and that it was perfectly competent for the Legislature to classify insurance companies and impose upon them different rates as might be deemed proper in the judgment of the Legislature. Hence the distinction made between joint-stock companies and mutual insurance companies does not render the law unconstitutional.

The circuit court therefore clearly erred in holding the law unconstitutional and overruling defendant Basford's demurrer and entering judgment against him, and its judgment and order denying a new trial are therefore reversed, and that court is directed to dissolve the injunction granted by it and enter a judgment in favor of the defendant.

WHITING, J. I am unable to concur in the views expressed in the foregoing opinion. While it must be presumed that the Legislature intended to pass only constitutional laws, and while it must be conceded that no statute passed by a Legislature should be declared unconstitutional unless it clearly and palpably conflicts with some provision of the Constitution, on the other hand, it must be conceded—and as we read the foregoing opinion it is therein conceded—that, if the effect of the statute under consideration is an exemption from the payment of property taxes by those insurance companies who are required by such law to pay the 2½ per cent. tax, this statute must be held unconstitutional, as it would, under such construction, be in direct conflict with section 7, art. 11, of the Constitution of this state, forbidding any law exempting property other than in such Constitution designated.

The foregoing opinion calls attention to the use of the terms "corporations" and "corporate property" as used in the Constitution of this state, and it is the view of the majority of this court that the Legislature must have had those terms as so used in mind, and that, when it used the term "taxes" in the exempting clause, by such word "taxes" it meant "corporation taxes"; that therefore the statute should be construed as if it read that the insurance companies shall "pay into the state treasury as taxes two and one-half per cent. * * * and the said two and one-half per cent. shall be in full of all corporation taxes, state and local, from such insurance company." I am unable to find in the wording of this statute anything that justifies the insertion by implication of any word. It seems to me that it would be impossible to use any plainer language to indicate an intent on the part of the Legislature to exempt such companies from property taxes, and certainly it could have been made no plainer unless by the use of

the word "property" before the word "taxes," thus introducing into such statute a word of limitation as the court now seeks to do by construction.    No rule is better settled than that the provisions of a statute are not to be extended beyond the clear import of the language used when such language is free from all ambiguity.    36 Cyc. 1189.    In Witte v. Koeppen, 11 S. D. 598, 79 N. W. 831, 74 Am. St. Rep. 826, this court said: "This court is not at liberty to disregard the plain and express terms of the statute upon any theory as to its spirit, or what it ought or that the Legislature might have intended it to be, when the statute is plain and unambiguous, as courts are not permitted to search for its meaning beyond the statute itself.    Cooley's Constitutional Limitations, 5457."    In State v. Santee, 111 Iowa, 1, 82 N. W. 445, 53 L. R. A. 763, 82 Am. St. Rep. 489, the court well said: "To avoid holding a statute unconstitutional, we are not warranted in forcing on its language a meaning which, upon a fair test, is repugnant to its terms."    In the case of State v. Wilder, 206 Mo. 541, 105 S. W. 272, the court says: "It is fundamental and one of the cardinal rules in the construction of statutes that the true intent and meaning of the lawmaking authority, as expressed in the language employed, should, if possible, be ascertained and declared.    On the other hand, it is equally well settled that words and phrases shall be taken in their plain or ordinary and usual sense, and that it is incumbent upon the courts to construe a statute as written, without regard to the results of the construction, or the wisdom of the law as thus construed."    In Diederich v. Rose et al., 228 Ill. 610, 81 N. E. 1140, the court said: "When the language is clear and admits of but one meaning, there is no room for construction.    Courts cannot change the clear meaning of words used, even though the consequences appear not to be such as were contemplated."    In Coffin v. Rich, 45 Me. 507, 71 Am. Dec. 559, the court says: "It is only when the words of a statute are obscure or doubtful that we have any discretionary power in giving them a construction, or can take into consideration the consequences of any particular interpretation.    'If the meaning of statutes is doubtful, the consequences are to be considered in

the construction of them; but, if the meaning be plain, no consequences are to be regarded, for that would be assuming legislative authority.' 4 Bac. Abr. 652." In the case of Ex parte Woods, 52 Tex. Cr. R. 575, 108 S. W. 1171, 16 L. R. A. (N. S.) 450, 124 Am. St. Rep. 1107, wherein it was claimed that a statute should be construed as if it read in words different than as enacted, in order that such statute might be held constitutional, the court said: "If we should, or are at liberty to, construe the act in question so as to hold that there is no exemption contained in it, it would manifestly follow that the objection which we are considering would not apply. We do not believe, however, that we could or should so hold. There are many rules for the construction of statutes. It would not be denied that the prime object of all rules for interpretation is to ascertain the will and intent of the lawmaker. This may oftenest be done, and usually can best be done, by giving effect to the language used, considered and construed in its ordinary sense. Of course, we. recognize that we are not imperatively required to give the language employed its literal meaning, if, in the light of the entire law, previous legislation, or the evident purpose and intent of the Legislature, a different construction should fairly be placed on the language used. Mere literalism, when it leads to absurdity, should, of course, be rejected; but where, in the light of the entire act, taking every part of it into consideration, the language is clear, the meaning obvious, and an exception is made in precise terms, we are neither required nor permitted to speculate as to what the Legislature meant where such meaning does not appear in the language used, nor are we at liberty to search for a meaning not apparent on the face of the act to be construed." In the case of City of Austin et al. v. Cahill, 99 Tex. 172, 88 S. W. 542, the court said: "It is of paramount importance at all times that the three co-ordinate departments of government be maintained in independence, each of the others, without encroachment or transgression. The judiciary, above all, on account of the peculiar position it occupies in the construction and interpretation of law, should scrupulously keep within its sphere, following the ancient landmarks so far as

adapted to modern conditions, and avoiding always the reproach of undertaking to legislate, directly or indirectly."

In the case of State v. Franklin County Savings Bank & Trust Co., 74 Vt. 246, 52 Atl. 1069, the question arose as to how the word "deposits," as the same was used in a taxation law, should be construed; it being claimed upon the one hand that it should be construed as though referring to only one class of deposits, while on the other hand it was held that as used it included all classes of deposits, and in construing such statute the court uses the following language: "It specifies that the tax shall be 'upon the average amount of its deposits, including money or securities received as trustee under order of court or otherwise,' with certain specified deductions therefrom. We discover nothing in any of the provisions of the law indicating that any particular class of general deposits was intended to be excluded therefrom. There is no ambiguity in the law in this regard. In Perkins v. Cummings, 66 Vt. 485, 29 Atl. 675, it is said that, 'where a statute is plain and unambiguous, courts cannot supply supposed omissions nor correct supposed mistakes, but must administer it as the Legislature made it.'" The words of the learned justice who wrote the dissenting opinion in Reed v. Todd, 25 S. D. 421, 127 N. W. 527, might well be quoted here: "The only possible thing that any future Legislature might with propriety add to the language used * * * is that the courts of this state shall not construe this section to mean anything else than just what it says."

I am unable to see the slighest ambiguity in the words used in the statute before us, and find nothing in the law that to my mind justifies this court in departing from the clear language of such statute in order to find an intent on the part of the Legislature such as would render the law constitutional. On the other hand, I find within the law itself a word which to my mind absolutely removes any doubt regarding what was in the minds of the legislators when they inserted this provision for exemption from other taxes. It will be noted that the law reads that "said two and one-half per cent. shall be in full of all taxes, state and local,

from such insurance company." When this law was enacted, there was not, and never had been, any statute upon the statute books of this state under which it was possible to levy any local tax against an insurance company other than local property taxes; or, in other words, there could be no "corporation" or corporate tax levied by the local authorities, as distinguished from the state authorities, and certainly the Legislature must be presumed to have used the word "local" advisedly, and were intending, by the use of such words, to exempt insurance companies from some taxes which otherwise might be levied against them.

SMITH, P. J. I concur in the views expressed in the foregoing opinion by Justice WHITING.